**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| DEVON A. JONES, | : | PRISONER HABEAS CORPUS |
| Inmate No. 57734-019, | : | 28 U.S.C. § 2241 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| MICHAEL ZENK, Warden, | : | 1:06-CV-2594-RWS-GGB |
| | : | |
| Respondent. | : | |

## <u>ORDER</u>

Petitioner, DeVon A. Jones, an inmate at the Atlanta Federal Prison

Camp in Atlanta, GA ("FPC-Atlanta), brought this habeas corpus action

pursuant to 28 U.S.C. § 2241 challenging a Federal Bureau of Prisons ("BOP")

regulation that prohibits the placement of inmates in home confinement or in

Residential Reentry Centers ("RRCs"), formerly known as Community

Correction Centers ("CCCs"), prior to the later of the final 10% of the

prisoner's total sentence or the final six months of the prisoner's sentence.

<u>See</u> 28 C.F.R. § 570.21 (hereinafter referred to as the "RRC Placement Rule").

This case comes before the Court on the Final Report and Recommendation of Magistrate Judge Gerrilyn G. Brill, who has recommended that the habeas petition be denied.  (See Final Rep. & Rec. of April 9, 2007 [7].)  Because the Court concludes that (1) 28 U.S.C. § 2241 provides an appropriate vehicle for Petitioner's challenge to the RRC Placement Rule; (2) Petitioner's failure to exhaust administrative remedies is judicially waived for futility; (3) Petitioner's challenge to the RRC Placement Rule under the Due Process and Equal Protection Clauses of the Fifth Amendment fails as a matter of law; and (4) the RRC Placement Rule is not based on a permissible construction of 18 U.S.C. § 3621(b), the Court adopts the Magistrate Court's Report and Recommendation in part, declines to adopt it in part, grants Petitioner's habeas petition, and enjoins the further enforcement of 28 C.F.R. § 570.21(a).

## Background

**I.      Facts[1]**

On June 29, 2006, Petitioner was convicted in the United States District Court for the Northern District of Georgia of one count of conspiracy to devise

---

[1] The Court's recitation of the facts are borrowed from the well-articulated Order by the Magistrate Court.

a scheme or artifice to defraud by mail fraud, twelve counts of mail fraud, and two counts of wire fraud.  <u>United States v. Jones</u>, No. 1:05-CR-611-1-TWT (filed Dec. 20, 2005).  The Honorable Thomas W. Thrash, Jr. sentenced Petitioner to a total of twenty-one months in prison, to be followed by three years of supervised release.  <u>Id.</u>  After ordering Petitioner to be committed to the BOP's custody, Judge Thrash recommended Petitioner's prison designation to "be close to the Atlanta area."  <u>Id.</u>

Petitioner began to serve his sentence at the FPC-Atlanta on September 11, 2006.  Petitioner has a full-term release date of June 9, 2008, and a projected statutory release date of March 19, 2008.  Petitioner states that, under the current, but allegedly invalid RRC Placement Rule, he is not eligible for placement into an RRC until January 24, 2008.

## II.    Petitioner's Challenge

Relying on <u>Wedelstedt v. Wiley</u>, 477 F.3d 1160 (10th Cir. 2007), <u>Levine v. Apker</u>, 455 F.3d 71 (2d Cir. 2006), <u>Fults v. Sanders</u>, 442 F.3d 1088 (8th Cir. 2006), and <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (3d Cir. 2005), Petitioner contends that 28 U.S.C. § 570.21(a) is an invalid exercise of the BOP's rule-making authority because it is inconsistent with the requirement of

18 U.S.C. § 3621(b) that the BOP individually consider inmates based on five specified factors when making placement determinations.  Petitioner also claims that the BOP's current policy violates his due process and equal protection rights.  He requests that the Court declare the regulations unlawful, and seeks an injunctive remedy mandating that the BOP consider him for placement into an RRC.

In response, Respondent contends that the instant petition should be dismissed on the following grounds: (1) Petitioner's claims seeking to challenge the BOP's current policy are not cognizable in habeas corpus; (2) Petitioner has failed to exhaust his administrative remedies with respect to his claims; (3) Petitioner's request for a "back-end" placement in an RRC is not ripe for adjudication; and (4) Petitioner is not entitled under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(b) to a transfer until the last 1.8 months of his sentence.

## III.    The Magistrate Court's Report and Recommendation

After thoroughly considering the arguments raised by both parties, the Magistrate Court agreed with Petitioner that his claims were cognizable in habeas corpus under 28 U.S.C. § 2241.  It reasoned that, because Petitioner's

claim was an attack on the execution of his sentence, it was properly brought pursuant to § 2241.  (<u>See</u> Mag. Ct. R & R [7] at 10.)

Turning to the exhaustion issue, the Court noted that a split had emerged within this district concerning whether a § 2241 habeas petitioner's failure to exhaust administrative remedies may be excused for futility.  Invoking the Eleventh Circuit's characterization of the exhaustion requirement in § 2241 cases as "jurisdictional," as opposed to "prudential," the Court concluded that the exhaustion requirement was not subject to judicial waiver in this circuit. Thus, the Court concluded it lacked jurisdiction to entertain the petition.  (<u>Id.</u> at 14.)  The Court noted, however, that were the exhaustion requirement subject to judicial waiver, it would recommend excusing Petitioner's failure to exhaust due to futility.  Under that assumption, it went on to address the merits of the petition.  (<u>Id.</u> at 14 n.7.)

The Magistrate Court then rejected Respondent's argument that Petitioner's challenge to the RRC Placement Rule was not ripe, finding that Petitioner was immediately subject to 28 C.F.R. § 570.21(a), and that "the issues are currently fit for review and the withholding of judicial review at this time could potentially cause a hardship on Petitioner."  (<u>Id.</u> at 16.)

5

Turning finally to the merits, the Court rejected Petitioner's due process challenge, finding that § 3624(c) "does not create a protected liberty interest to any pre-release treatment." (Id. at 18.)  The Court also rejected Petitioner's equal protection challenge, finding that "Petitioner has failed to allege any facts establishing that the BOP's application of the  Rule to his sentence amounted to unfair treatment compared to other prisoners who were otherwise similarly situated." (Id. at 19 (citations and quotations omitted).)  Finally, the Court concluded that the Rule was a valid exercise of the BOP's discretionary authority under § 3621(b) and was owed deference under Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

Having carefully reviewed the Magistrate Court's Report and Recommendation and the parties' responsive filings, the Court adopts it insofar as it concludes that (1) the instant petition is ripe for adjudication and (2) Petitioner's challenges to 28 C.F.R. § 570.21(a) under the Due Process and Equal Protection Clauses of the Fifth Amendment fail as a matter of law.  The Court declines to adopt the remainder of the Report, and turns now to consider whether a writ of habeas corpus should issue.

**Discussion**

**I.      28 U.S.C. § 2241 Provides the Appropriate Vehicle to Challenge the RRC Placement Rule**

Before turning to the merits of the petition, the Court must first determine whether Petitioner, in pursuing his claims under 28 U.S.C. § 2241, has chosen an appropriate legal vehicle to challenge the RRC Placement Rule.  After careful consideration, the Court concludes that Petitioner may seek the relief he requests in a § 2241 habeas petition.

The federal habeas statute provides that "the writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States. . . ."  28 U.S.C. § 2241(c)(3).  In its original form, "the federal habeas statute mirrored the common-law writ of habeas corpus, in that it authorized a single form of relief: the prisoner's immediate release from custody."  Wilkinson v. Dotson, 544 U.S. 74, 85, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005) (Scalia, J., concurring); see also Preiser v. Rodriguez, 411 U.S. 475, 486, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (stating that the writ "has been accepted as the specific instrument to obtain release from [unlawful] confinement").  Congress, however, amended

7

the statute to provide additionally that the habeas court "shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243.  Invoking this "broader remedial language" of § 2243, courts have construed federal statutory habeas to offer forms of relief in addition to immediate release.  Wilkinson, 544 U.S. at 85 (Scalia, J., concurring).  For example, a § 2241 writ of habeas corpus may issue to shorten a prisoner's sentence, Preiser, 411 U.S. at 489, or, more pertinent here, to effect a "quantum change in the level of custody," Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991); see also United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991) (challenges to the place of imprisonment, and not to the fact of federal conviction, are properly brought under § 2241).

The issue concerning this Court is how far § 2243 stretches the common-law roots of § 2241.  Although Preiser and Graham lend support to Petitioner, those cases differ from Petitioner's in a material respect.  In Preiser and Graham, the petitioners sought a court order compelling a change in the length of a prisoner's sentence or a change in the level of his custody.  But here, Petitioner seeks only *consideration* for such a change under a new set of administrative procedures.

8

The Supreme Court has recently reiterated the distinction between relief at the "core of habeas corpus"—which may *only* be pursued in habeas, <u>see</u> <u>Preiser v. Rodriguez</u>, 411 U.S. at 486—and lesser forms of relief, which may generally be pursued via civil rights legislation such as 42 U.S.C. § 1983, and as to which it is less clear whether habeas also provides a concurrent remedy. <u>See</u> <u>Wilkinson</u>, 544 U.S. at 82.  Although it is a difficult question, a close examination of <u>Wilkinson</u>, the Court's more recent treatment of a § 2241 petition in <u>Lopez v. Davis</u>, 531 U.S. 230, 236, 121 S. Ct. 714, 718, 148 L. Ed. 2d 635 (2001), and several decisions by the Eleventh Circuit convince this Court that § 2241 is an appropriate vehicle for the instant action.

In <u>Wilkinson</u>, the Supreme Court held that a constitutional challenge to state parole eligibility requirements was properly brought pursuant to 42 U.S.C. § 1983 because such a challenge was not at the "core of habeas corpus" as defined in <u>Preiser</u>, and thus not exclusively remedied through a habeas action. 544 U.S. at 82.  In doing so, the Court focused on the remedies sought by the petitioners.  Drawing on its earlier decision in <u>Preiser</u>, the Court explained that remedies which lay at the "core of habeas corpus" compel *release* from confinement or *judicial invalidation of* a sentence or a level of confinement.  <u>Id.</u>

9

On the other hand, "where success in the action *would not necessarily* spell immediate or speedier release for the prisoner" or immediate or speedier release from a more restrictive level of confinement, the remedy is not within the core of habeas corpus and thus must not be exclusively brought in habeas.  Id. (emphasis in original); see also id. (stating that the remedy sought "at most will speed *consideration* of a new parole application" but not "necessarily spell speedier release").  Since the petitioners in Wilkinson sought simply "new eligibility review" under new parole procedures, and not an immediate order changing the Petitioner's parole status, the Court reasoned the action was not at the core of habeas and thus could be brought under § 1983.  Id.

Significantly, however, the Court in Wilkinson did not go on to address whether the relief the petitioners sought would concurrently be available in habeas—*i.e.*, whether the relief requested by the petitioners lay at the periphery of habeas corpus, such that it could be pursued either in habeas or under § 1983. Although the two-justice concurrence by Justice Scalia noted that "a contrary holding would require us to broaden the scope of habeas relief beyond recognition," see id. at 85 (Scalia, J., concurring), the majority was careful not to rule out the possibility of such overlapping relief, limiting its analysis to the

10

more discrete question of whether the requested relief lay at the *core* of habeas corpus.  Id. at 79-83; see also  Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 83 (D.D.C. 2006) (noting that Wilkinson does not foreclose in some cases the possibility of "overlapping" remedies in both § 1983 and habeas).

Wilkinson instructs that the remedy Petitioner seeks here—individualized consideration for a change in the level of his current custody under the previous BOP procedures—does not lie at the core of habeas corpus.  As did the petitioners in Wilkinson, Petitioner here seeks a review of BOP regulations that categorically refuse *consideration* for a change in the manner in which his sentence is being executed.  He does not seek "immediate release" from his level of custody.  At the very least, then, it is clear that § 2241 would not provide the *exclusive* avenue for the relief sought, since the petitioners in Wilkinson were permitted to seek analogous relief via § 1983.[2]

But, Wilkinson does not mandate the conclusion that the two are mutually exclusive.  As several courts have recognized, § 1983 and habeas may

---

[2] Here, Petitioner could not seek relief under § 1983, however, because that statute provides a remedy against only state actors.

provide "overlapping" remedies in certain actions which lie at the intersection of challenges to an "execution of the sentence"—typically brought in habeas—and challenges to "conditions of confinement"—typically brought in a § 1983 or a <u>Bivens</u> action.  <u>See</u> <u>Taylor v. U.S. Probation Office</u>, 409 F.3d 426 (D.C. Cir.2005) (stating, in affirming that prisoner could bring § 1983 action for alleged unlawful confinement in the wrong institution, that "[i]t may well be that habeas is available," but it does not follow that habeas is the exclusive remedy); <u>Brown v. Plaut</u>, 131 F.3d 163, 168-69 (D.C. Cir. 1997) ("Habeas corpus might conceivably be available to bring challenges to such prison conditions . . . but requiring the use of habeas corpus in such cases would extend <u>Preiser</u> far beyond the 'core' of the writ that <u>Preiser</u> set out to protect."); <u>Jasperson v. Federal Bureau of Prisons</u>, 460 F. Supp. 2d 76, 83 (D.D.C. 2006) (stating, in case challenging BOP placement rules, that "while BOP may be correct in arguing that Jasperson's action *could* be brought upon his surrender to BOP as a habeas petition, it does not follow that his civil action here therefore is foreclosed.") (emphasis in original).

Moreover, the Supreme Court's recent consideration of a § 2241 petition that sought invalidation of BOP eligibility rules convinces this Court that §

2241 provides an appropriate vehicle for the instant challenge.  See Lopez v.
Davis, 531 U.S. 230, 236, 121 S. Ct. 714, 718, 148 L. Ed. 2d 635 (2001).  In
Lopez, the Supreme Court considered a § 2241 petition challenging the BOP's
eligibility rules for participation in a drug treatment program, in which a
prisoner could earn good-time credits against the length of his sentence.  Id. at
236.  The petitioners sought an injunction requiring individualized
consideration for participation in the program.  By reaching the merits without
questioning whether the petitioners chose a proper legal vehicle for their claims,
the Court implicitly recognized § 2241 as an appropriate vehicle to challenge a
categorical exclusion from statutory eligibility for participation in a prison
program.  Id.

Relying on Lopez, the Eleventh Circuit has also confirmed in several
non-binding, unpublished decisions that a § 2241 may be brought to challenge
BOP regulations that concern the execution of a prisoner's sentence. United
States v. Warmus, 151 Fed. Appx. 783, 786 (11th Cir. 2005) ("A prisoner in
federal custody may bring an action under § 2241 to attack, *inter alia*, Bureau
regulations."); Williams v. Pearson, 197 F. App'x 872, 876 (11th Cir. 2006)
(citing Warmus and holding that "§ 2241 was the proper statute" for bringing a

suit challenging BOP regulations concerning collection of special assessment). The undersigned has also previously reached the same conclusion in a case challenging the precursor to the 2005 RRC Placement Rule.  See McDonald v. Sawyer, No. 1:03-CV-235-RWS, 2003 WL 24046340, at *2 (N.D. Ga. Feb. 14, 2003).

What is more, several courts of appeals outside of the Eleventh Circuit— albeit focusing on the nature of the challenge, instead of the nature of the requested remedy—have held that § 2241 provides an appropriate legal vehicle for a challenge to the RRC Placement Rule.  Levine, 455 F.3d at 77-78 ("We find that a habeas petition under 28 U.S.C. § 2241 was the proper vehicle to challenge confinement in a federal correctional center rather than a CCC."); Woodall, 432 F.3d at 242-44 (coming to same conclusion and noting, after gathering cases, that the Second, Sixth, Ninth, and Tenth Circuits are in agreement).  Judge Calabresi, writing on behalf of the Second Circuit, explained:

> Levine's petition challenges the *place* of his imprisonment, including the differences in the *manner* and *conditions* of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish CCCs from other BOP

14

> penal facilities.  Levine's claim is therefore not an
> attack on the lawfulness of his sentence, but rather an
> attack on the execution of his sentence, and as such is
> governed by § 2241.

Levine, 455 F.3d at 242-43 (emphasis in original).

That is not to say, however, that the issue has been settled.  Some courts have concluded that § 2241 is not the appropriate vehicle for challenging BOP eligibility rules, finding mutual exclusivity between the remedies sought under § 2241 and other legal avenues.  See Richmond v. Scibana, 387 F.3d 602, 605 (7th Cir. 2004); Patel v. Lappin, 4:06-CV-123-HLM (N.D. Ga. Aug. 31, 2006) (Murphy, J.).  Invoking the distinction drawn in Wilkinson between core habeas remedies and remedies typically pursued through civil rights legislation which would not immediately result in some form of mandatory present or future placement, these courts have concluded that the instant challenge may not properly be brought under § 2241.

Some years prior to Wilkinson, the Seventh Circuit adopted this either/or approach in Richmond v. Scibana, 387 F.3d 602, 605 (7th Cir. 2004), concluding that a prisoner could not bring a § 2241 habeas petition to challenge the predecessor to the RRC Placement Rule because "[c]onsistency" dictated

AO 72A
(Rev.8/82)

that such a remedy should be pursued in a civil rights action pursuant to § 1983, a <u>Bivens</u> action, or under the Administrative Procedures Act.  <u>Id.</u> Because "[a] judge could do no more than determine the extent of the Bureau's discretion to make placement decisions[, and because] the substance of any eventual decision is not at issue," the Court concluded that the habeas vehicle was improper.  <u>Id.</u>

But to announce today, as has the Seventh Circuit in <u>Richmond</u>, that consistency requires that the remedies available in § 2241 and other causes of action be treated as mutually exclusive, requires an inferential leap carefully avoided in <u>Wilkinson</u> and notably inconsistent with the Eleventh Circuit's approach in <u>Williams</u> and <u>Warmus</u>.  <u>See</u> <u>Jasperson</u>, 460 F. Supp. 2d at 81 n.1 (noting that in <u>Richmond</u>, "[t]he Seventh Circuit did not entertain the possibility that there could be some overlap between available remedies for certain prisoners").  The either/or approach may comport with the views expressed by the two-Justice concurrence in <u>Wilkinson</u>, <u>see</u> 544 U.S. at 85 (Scalia, J., concurring), but it is at odds with the Supreme Court's consideration of a § 2241 petition challenging BOP procedures in <u>Lopez</u>.  In view of this authority, and the treatment of § 2241 petitions within this circuit, it is not within the province of this Court to adopt the either/or approach today.

16

Finally, the Court recalls its statutory duty to "dispose of the matter as law and justice require." 28 U.S.C. § 2243.  In view of the precedent established by this Court, the Eleventh Circuit, and four other circuit courts of appeals, it is no surprise that Petitioner has chosen § 2241 as the legal vehicle for his action.  In addition to relying on decisions by this Court and the Eleventh Circuit, prisoners may well rely on the legal position recently taken by the BOP that a § 2241 petition *is* in fact an appropriate vehicle to challenge placement decisions by the BOP.  Jasperson, 460 F. Supp. 2d at 83 (noting BOP's argument that a challenge to the RRC Placement Rule "could be brought . . . as a habeas petition") (emphasis removed).  Reliance and fairness also dictate that Petitioner be allowed to proceed in § 2241.

In sum, while the Court recognizes that § 2241 may not provide the *exclusive* vehicle by which Petitioner may challenge the RRC Placement Rule because the remedy sought does not lie at the core of habeas corpus, the Court concludes that Petitioner has appropriately chosen § 2241 in pursuit of his claims.

## II.     Petitioner's Failure to Exhaust Administrative Remedies is Waived as Futile

17

The second question this Court must address is whether the petition must be dismissed because Petitioner has admittedly not attempted to exhaust administrative remedies.  Petitioner argues that, because the § 2241 exhaustion requirement in the Eleventh Circuit is judicially created, it may be waived for discretionary reasons by courts.[3]  Thus, Petitioner requests that the Court excuse his failure to exhaust this process because that effort would have been futile.  Although recognizing that futility, the Magistrate Court concluded that Petitioner's failure to aggrieve his challenge was fatal to his § 2241 petition.

It is now settled that the statutory exhaustion requirement of § 1997e(a) of the Prison Litigation Reform Act ("PLRA") does not apply to habeas petitions.  Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004).  The Eleventh Circuit has held, however, that a prisoner seeking habeas relief

---

[3] The Court is aware of two other decisions within this district which have addressed a similar contention.  In Green v. Zenk, No. 1:06-CV-1231-JTC-ECS (N.D. Ga. March 20, 2007), Chief Judge Jack T. Camp adopted Magistrate Judge E. Clayton Scofield's conclusion that "[t]he current state of the law in this Circuit does not leave room for this Court to engraft a futility exception onto the requirement that § 2241 petitioners exhaust administrative remedies prior to filing suit."  Id.  However, in Martin v. Zenk, No. 1:06-CV-1498-RLV-AJB (N.D. Ga. Dec. 26, 2006), Judge Robert L. Vinings, Jr. adopted the recommendation of Magistrate Judge Alan J. Baverman that "under existing Eleventh Circuit precedent, exhaustion of administrative remedies is prudential and not mandatory in the current context, despite various references in the caselaw to the § 2241 exhaustion requirement as 'jurisdictional.'"  Id.

AO 72A
(Rev.8/82)

pursuant to § 2241 is subject to a judicially-imposed administrative-exhaustion requirement.  Id.  Relying on the decisions by the Second Circuit in Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001), the Fifth Circuit in Fuller v. Rich, 11 F.3d 61, 62 (5th Cir.1994), the Sixth Circuit in Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981), and the Eight Circuit in Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir.1974), Skinner held that exhaustion of administrative remedies was a prerequisite to seeking a writ of habeas corpus under § 2241. 355 F.3d at 1295.

Petitioner claims that he should be excused from "tilting at the administrative windmills," See Howard v. Ashcroft, 248 F. Supp. 2d 518, 533 (M.D. La. 2003), because the adoption of 28 C.F.R. § 570.21(a) makes clear that such an effort would be futile.[4]  Petitioner finds support for a futility exception in McCarthy v. Madigan, 503 U.S. 140, 144 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992), superseded by statute, 42 U.S.C. § 1997e(a), which held, prior to the enactment of the PLRA, that a judicially-imposed exhaustion

---

[4] The BOP has established a three-tiered administrative remedy process, which "[a]n inmate has not fully exhausted . . . until he has appealed through all three levels." Irwin v. Hawk, 40 F.3d 347, 349 n.2 (11th Cir. 1994) (discussing 28 C.F.R. §§ 542.10-.15).

AO 72A
(Rev.8/82)

requirement in <u>Bivens</u> actions could be waived for futility.  The Court drew a distinction between statutorily-imposed and judicially-imposed exhaustion requirements, explaining that "[w]here Congress specifically mandates, exhaustion is required."  <u>Id.</u> at 144.  But "where Congress has not clearly required exhaustion, sound judicial discretion governs."  <u>Id.</u> at 144.  Delineating the bounds of "sound judicial discretion," the Court noted that "at least three broad sets of circumstances" excused administrative exhaustion: (1) where prejudice to the prisoner's subsequent court action "may result, for example, from an unreasonable or indefinite timeframe for administrative action"; (2) where the administrative agency may not have the authority "to grant effective relief"; or (3) "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." <u>Id.</u> at 146-48.[5]   It is in the third of these exceptions—where "requiring administrative review . . . 'would be to demand a futile act'"—that Petitioner claims entitlement to judicial waiver.  <u>Id.</u>

---

[5] More recently, the Supreme Court has stated that a party may not be required to exhaust administrative procedures from which there is no possibility of receiving any type of relief.  <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6, 121 S. Ct. 1819, 149 L. Ed.2d 958 (2001) (stating that "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the [petitioner] with nothing to exhaust").

at 148 (quoting <u>Houghton v. Shafer</u>, 392 U.S. 639, 640, 88 S. Ct. 2119, 2120, 20 L. Ed. 2d 1319 (1968)).

Respondent counters that such an exception is not available to Petitioner because the Eleventh Circuit has repeatedly referred to the judicial requirement of exhaustion in § 2241 cases as "jurisdictional."  <u>See</u> <u>Skinner</u>, 355 F.3d at 1295 (stating, in dismissing § 2241 petition for failure to exhaust, that "[e]xhaustion of administrative remedies is jurisdictional"); <u>Winck v. England</u>, 327 F.3d 1296, 1300 n.1 (11th Cir. 2003) (noting, in dicta, that "[e]xhaustion of administrative remedies is jurisdictional when a petition for writ of habeas corpus is brought pursuant to 28 U.S.C. § 2241 for release from a federal prison") (internal quotations omitted); <u>Gonzalez v. United States</u>, 959 F.2d 211, 212 (11th Cir. 1992) (stating, in § 2241 case, that "[e]xhaustion of administrative remedies is jurisdictional").  Respondent contends that in doing so, the Eleventh Circuit has indicated that judicial waiver is not available in § 2241 cases because exhaustion is a jurisdictional prerequisite.

As the Magistrate Court reasoned, however, the question whether the Eleventh Circuit considers the exhaustion requirement in § 2241 subject to judicial waiver is, at best, unsettled.  On the one hand, the Eleventh Circuit has

AO 72A
(Rev.8/82)

recognized the statutory/judicial distinction given effect in <u>McCarthy</u>,

indicating that exceptions to judicially-imposed exhaustion requirements remain

available.  See <u>Richardson v. Reno</u>, 162 F.3d 1338, 1374 (11th Cir. 1998),

<u>vacated on other grounds</u>, 526 U.S. 1142 (1999) ("Although judicially

developed exhaustion requirements might be waived for discretionary reasons

by courts, statutorily created exhaustion requirements bind the parties and the

courts."); <u>Hicks v. Jordan</u>, 165 F. App'x 797, 799 n.2 (11th Cir. 2006) (citing

<u>Richardson</u> with approval and recognizing distinction between statutorily

mandated, and thus non-waivable exhaustion requirements, and judicially

developed, and thus potentially waivable exhaustion requirements); <u>cf.</u> <u>Thomas</u>

<u>v. Crosby</u>, 371 F.3d 782, 814 n.11  (11th Cir. 2004) (Tjoflat, C.J., concurring)

(noting that, in § 2254 cases, "a petitioner may overcome a procedural bar by

demonstrating 'cause and prejudice' for his failure to exhaust state remedies").

In several other cases, however, the Eleventh Circuit has indicated some doubt

about whether the exhaustion requirement in § 2241 cases may be waived.  See

<u>Jaimes v. United States</u>, 168 F. App'x 356, 359 n.4 (11th Cir. 2006) ("Given

our precedent that the exhaustion requirement in § 2241 cases . . . is

jurisdictional, whether he may even assert a futility exception to the

requirement is questionable."); see also Winck, 327 F.3d at 1300 n.1 (indicating

that § 2241 is subject to "jurisdictional" requirement and thus may not be

waivable).

But the Eleventh Circuit's occasional labeling of the § 2241 exhaustion

requirement as "jurisdictional" does not, in this Court's view, resolve the

question of whether judicial waiver is *ever* available in § 2241 cases.  Rather, it

may be an accurate, though recently discarded, see Bowles v. Russell, ___ S.

Ct. ___, 2007 WL 1702870 (June 14, 2007), characterization of *the effect* of the

rule's application when the concerns underlying judicially-imposed exhaustion

cause courts to decline jurisdiction.  See McCarthy, 503 U.S. at 146

(characterizing application of a judicial exhaustion requirement as "declin[ing]

the exercise of jurisdiction" on grounds of comity).  Thus, while courts have

often described *statutorily* imposed exhaustion requirements as jurisdictional,

and *judicially* imposed exhaustion requirements as prudential, see,

e.g., Pichardo v. Ashcroft, 374 F.3d 46, 52 (2d Cir. 2004) (stating "judicially

imposed exhaustion requirements are prudential and statutory ones are

jurisdictional"), both requirements concern a court's exercise of jurisdiction.

The important difference, as explained in McCarthy, is that the failure to

23

comply with the statutory exhaustion requirement *precludes* jurisdiction, whereas failure to exhaust a judicially-imposed requirement *counsels* the Court to decline jurisdiction except in its "sound judicial discretion." <u>McCarthy</u>, 503 U.S. 144.

What is more, any doubt left by <u>McCarthy</u> concerning whether the judicially imposed exhaustion requirement in § 2241 cases is a jurisdictional prerequisite has been resolved by the Supreme Court's recent opinion in <u>Bowles v. Russell</u>, ___ S. Ct. ___, 2007 WL 1702870 (June 14, 2007). There, the Court determined that the deadlines for filing a federal notice of appeal were mandatory and jurisdictional because they were statutorily, and not judicially, imposed; thus, no exceptions, such as waiver or equitable tolling, could apply. <u>Id.</u> at *4. In coming to this conclusion, the Court drew a distinction between statutory time requirements and court-fashioned time requirements, finding that only the former could be properly characterized as "jurisdictional." <u>Id.</u> at *3. The Court reasoned that, under Article III, Section 1 of the Constitution, "'[o]nly Congress may determine a lower federal court's subject-matter jurisdiction,'" and thus "it was improper for courts to use the term 'jurisdictional' to describe [judicially imposed] time prescriptions in rules of

court." Id. at *4 (quoting Kontrick v. Ryan, 540 U.S. 443, 452, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)).

The exhaustion requirement imposed in § 2241 cases has judicial, and not statutory, underpinnings. Skinner v. Wiley, 355 F.3d at 1295. In accordance with Article III, Section 1 of the Constitution, that requirement may not be considered a limitation on the Court's subject-matter jurisdiction. Bowles, 2007 WL 1702870, at *4. Because the exhaustion requirement is judicially fashioned, a court has discretion to waive the requirement in its "sound judicial discretion." McCarthy, 503 U.S. at 144. Thus, the exceptions recognized in McCarthy, including the futility exception, apply to the exhaustion requirement in § 2241 cases.[6]

---

[6] The Court's conclusion that a futility exception is available in § 2241 cases is bolstered by its understanding that courts outside of the Eleventh Circuit uniformly recognize a McCarthy-based futility exception to the judicially-imposed exhaustion requirement in § 2241 cases. See, e.g., Beharry v. Ashcroft, 329 F.3d 51, 58 (2d Cir. 2003) (noting "pivotal" distinction between statutory and judicial exhaustion requirements, the latter of which "recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process"); Woodall, 432 F.3d at 239 n.2 (agreeing that "purposes of exhaustion would not be served" by requiring inmate challenging BOP regulations to exhaust administrative remedies and affirming district court determination that futility exception applied to exhaustion requirement); Fuller, 11 F.3d at 62 ("Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile

In sum, the Court concludes that, although the Eleventh Circuit has occasionally labeled the exhaustion requirement in § 2241 cases as "jurisdictional," it has not uprooted the exhaustion requirement from its

---

course of action."); Fazzini v. Northeast v. Northeast Ohio Correctional Center, 473 F.3d 229, 236 (6th Cir. 2006) ("We have recognized that the habeas exhaustion requirement is not without exception, as a prisoner's failure to exhaust available state or administrative remedies may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks."); Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004) (noting an exception in § 2241 cases where "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue") (quoting Iddir v. INS, 301 F.3d 492, 498 (7th Cir. 2002)); Elwood v. Jeter, 386 F.3d at 844 n.1 (same); Holman v. Booker, 166 F.3d 347 (10th Cir. 1998) (Table), at *3 ("Holman is correct that a futility exception to the exhaustion requirement exists."); cf. Wedelstedt v. Wiley, No. 06-cv-01337, 2006 WL 2475268, at *3 (D.Colo. Aug. 24, 2006), aff'd 477 F.3d at 1162; Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004) (recognizing that exhaustion in § 2241 may be judicially waived); Monahan v. Winn, 276 F. Supp. 2d 196, 204-05 (D. Mass. 2003) (reviewing challenge to the BOP policy despite failure to exhaust); Ferguson v. Ashcroft, 248 F. Supp. 2d 547, 563 (M.D. La. 2003) (inmate challenging the BOP policy "need not exhaust administrative remedies that are mere apparitions"); Pimentel v. Gonzales, 367 F. Supp. 2d 365, 371-72 (E.D.N.Y. 2005) (concluding that imposing exhaustion requirement in petitioner's challenge of BOP placement rules would amount to "futile exercise" and consequential delay would engender irreparable harm).

Notably, in adopting the § 2241 judicial exhaustion requirement in Skinner, the Eleventh Circuit adopted the reasoning of several cases which explicitly recognized the availability of judicial waiver. 355 F.3d at 1295 (adopting the reasoning of Carmona, Fuller, and Willis); see Carmona, 243 F.3d at 634 ("When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust."); Fuller, 11 F.3d at 62 (same, as noted supra); Willis, 506 F.2d at 1015 (stating that habeas is "available, except in the most unusual circumstances, only after administrative procedures *which provide a real possibility for relief* have been exhausted") (emphasis added).

26

judicial, and thus, prudential foundation.  Under <u>McCarthy</u>, Petitioner may still seek judicial waiver of the exhaustion requirement by demonstrating that "requiring administrative review . . . 'would be to demand a futile act'" because of a predetermination by an administrative agency.  <u>Id.</u> at 148 (quoting <u>Houghton</u>, 392 U.S. at 640).

Having concluded that the futility exception is available to Petitioner, the Court turns to examine whether Petitioner's failure to exhaust administrative remedies should be waived for futility.  The Court concludes that it should. Here, the BOP has enacted a categorical rule denying Petitioner and all other prisoners eligibility for placement into an RRC until the lesser of ten percent of his sentence or six months remains.  It has predetermined by rulemaking the issue Petitioner challenges here.  What is more, the BOP has continued to enforce this rule in the face of its invalidation by four federal courts of appeals and various district courts in other jurisdictions.  There can be little doubt that "requiring administrative review . . . 'would be to demand a futile act,'" <u>McCarthy</u>, 503 U.S. at 148 (quoting <u>Houghton</u>, 392 U.S. at 640), and the "purposes of exhaustion would not be served" by requiring Petitioner to exhaust the three-tiered BOP complaint process.  <u>See</u> <u>Woodall</u>, 432 F.3d at 239 n.2.

Accordingly, the Court waives Petitioner's failure to exhaust administrative

remedies.

### III.   The BOP Placement Rules are an Unreasonable Interpretation of Section 3621(b).

Having concluded that Petitioner has properly sought relief under § 2241

and that Petitioner's failure to exhaust is excused for futility, the Court turns to

examine the merits of Petitioner's challenge to the RRC Placement Rule.

### A.   Legal, Statutory, and Administrative Framework[7]

The instant action mirrors numerous other habeas corpus and civil rights

actions filed both in this Court and in other federal courts. See, e.g., Wedelstedt

v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71 (2d

Cir. 2006); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Federal

Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005); Troy v. Apker, No. 05-1306,

2005 WL 1661101 (S.D.N.Y. Jun. 30, 2005); Charboneau v. Menifee, No. 05-

1900, 2005 WL 2385862 (S.D.N.Y. Sept. 28, 2005); Lee v. United States, No.

04-0610-CG-C, 2005 WL 2179796 (S.D. Ala. Sept. 6, 2005); Jackson v. Fed.

Bureau of Prisons, No. 05-2339, 2005 WL 1705775 (D. N.J. Jul. 20, 2005).

---

[7] This background is largely borrowed from the Magistrate Court's Report and Recommendation.

28

Each of these cases examines the obligation of the BOP under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c) to make individualized placement decisions, and each considers its authority to promulgate rules of general applicability in furtherance of that obligation.

Before December 2002, the BOP maintained a policy under which inmates were generally transferred to CCCs in the final six months of their sentences. Crowley v. Federal Bureau of Prisons, 312 F. Supp. 2d 453, 456 (S.D.N.Y. 2004). The BOP's "Program Statement on Community Corrections Center (CCC) Utilization and Transfer Procedures," reissued on Dec. 16, 1998, as Program Statement No. 7310.04 (replacing Program Statement No. 7310.03, issued on March 25, 1996), provided that, because "[a] CCC meets the definition of a 'penal or correctional facility'" set forth in § 3621(b), "the [BOP] is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC," but not in home confinement, outside of the § 3624(c) time restrictions. United States Dep't of Justice, Federal Bureau of Prisons, Program Statement 7310.04 at 2, 4. The Program Statement further provided, however, in its list of "CCC referral guidelines," that "placement [in a

CCC] beyond 180 days [is] highly unusual, and only possible with extraordinary justification." Id. at 8.

In December 2002, the Department of Justice Office of the Legal Counsel declared the BOP's placement policy to be unlawful because § 3624(c) restricted placement in CCCs to a maximum of the lesser of ten percent of an inmate's sentence or six months.  In response, the BOP changed its policy (the "2002 Policy") and limited CCC placement to the final ten percent of a prisoner's sentence, not to exceed six months.  See Terry v. Menifee, No. 04 Civ. 4505, 2004 WL 2434978, at *1-2 (S.D.N.Y. Nov. 1, 2004).  The 2002 Policy spawned numerous challenges by inmates, and many courts, including this Court, held that the 2002 Policy was invalid.  See Terry, 2004 WL 2434978, at *3 n.2 (collecting cases); Elwood, 386 F.3d at 846-47; Goldings v. Winn, 383 F.3d 17, 28 (1st Cir. 2004); McDonald v. Sawyer, No. 1:03-CV-235-RWS, 2003 WL 24046340 (N.D. Ga. Feb. 14, 2003).

In response, the BOP proposed and adopted new regulations pursuant to the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. §§ 551-59 ("APA"). Community Confinement, 69 Fed. Reg. 51213 (proposed Aug. 18, 2004); Community Confinement, 70 Fed. Reg. 1659

30

(proposed Jan. 10, 2005, effective Feb. 14, 2005, and codified at 28 C.F.R. §

570.21).  The BOP Placement Rules mandate that the BOP limit CCC

assignments to the same extent as it did under the 2002 Policy, *i.e.*, for the

lesser of six months or the last ten percent of the inmate's sentence. 28 C.F.R. §

570.21(a).

Predictably, as did the 2002 Policy, the 2005 Placement Rules have

inspired legal challenges, the instant action among them.  In his petition,

Petitioner appears to challenge both the 2002 Policy and the 2005 Placement

Rules.  However, as the 2005 Rule has effectively replaced the 2002 Policy, this

Court considers only Petitioner's arguments regarding the 2005 Rule.  <u>See</u>

<u>Levine</u>, 455 F.3d at 76-77 (concluding that petitioner's challenge to 2002 policy

was moot because alleged unlawfulness of 2002 policy did not affect petitioner

and 2005 Rule superceded 2002 policy).

**B.**     **Legal Framework under <u>Chevron</u>**

When reviewing an agency's interpretation of a statute it administers,

courts apply the two-step test articulated in <u>Chevron U.S.A., Inc. v. Natural</u>

<u>Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-44, 104 S. Ct. 2778, 2781-82, 81 L

.Ed. 2d 694 (1984); <u>see</u> <u>also</u> <u>Scheerer v. U.S. Attorney General</u>, 445 F.3d 1311,

1318-19 (11th Cir. 2006).  Under <u>Chevron</u>'s first prong, the court must determine "whether Congress has directly spoken to the precise question at issue."  <u>Chevron</u>, 467 U.S. at 842.  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  <u>Id.</u> at 842-43.  If Congress has not directly addressed the matter, or if the statute is ambiguous with respect to the matter, the court moves to <u>Chevron</u>'s second step to decide "whether the agency's [regulation] is based on a permissible construction of the statute."  <u>Id.</u> at 843.

"Even if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority."  <u>Lopez v. Davis</u>, 531 U.S. 230, 243-44, 121 S. Ct. 714, 148 L. Ed. 2d 635 (2001) (quoting <u>American Hospital Assn. v. NLRB</u>, 499 U.S. 606, 612, 111 S. Ct. 1539, 113 L. Ed. 2d 675 (1991)).  Moreover, "statutory eligibility standards alone do not reflect a clear congressional intent to preempt further agency regulation."  <u>Scheerer</u>, 445 F.3d at 1321.

32

**B.      The Petitioner's Challenge**

To assess the validity of the RRC Placement Rule, the Court begins with

the statute it implements.  18 U.S.C. § 3621(b) requires the BOP to both (1)

designate the initial place of inmates' imprisonment and (2) direct the transfer

of inmates by considering five factors.  It provides:

> The [BOP] shall designate the place of the prisoner's
> imprisonment.  The [BOP] may designate any
> available penal or correctional facility that meets
> minimum standards of health and habitability
> established by the [BOP], whether maintained by the
> Federal Government or otherwise and whether within
> or without the judicial district in which the person was
> convicted, that the [BOP] determines to be appropriate
> and suitable, considering –
>
> (1)     the resources of the facility
>          contemplated;
> (2)     the nature and circumstances of the
>          offense;
> (3)     the history and characteristics of the
>          prisoner;
> (4)     any statement by the court that imposed
>          the sentence–
>          (A)     concerning the purposes for which
>                   the sentence to imprisonment was
>                   determined to be warranted; or
>          (B)     recommending a type of penal or
>                   correctional facility as appropriate;
>                   and
> (5)     any pertinent policy statement issued by
>          the Sentencing Commission pursuant to

33

> section 994(a)(2) of title 28.
>
> . . . .
>
> The Bureau may at any time, having regard for the
> same matters, direct the transfer of a prisoner from
> one penal or correctional facility to another.

18 U.S.C. § 3621(b)**.**

The regulation at issue, 28 C.F.R. § 570.21(a), operates within the

authority provided by § 3621(b), providing as a categorical matter that no

prisoner may be designated to an RRC until the later of the last 10 percent or

the last six months of his sentence.  It states:

> The Bureau will designate inmates to community
> confinement only as part of pre-release custody and
> programming, during the last ten percent of the prison
> sentence being served, not to exceed six months.

28 C.F.R. § 570.21(a).

Moreover, Respondent points out that 18 U.S.C. § 3624(c) also requires

the BOP to assure that prisoners are afforded an opportunity to prepare for

reentry into the community in the last 10 percent or last six months of their

sentences.  It provides:

> The Bureau of Prisons shall, to the extent practicable,
> assure that a prisoner serving a term of imprisonment
> spends a reasonable part, not to exceed six months, of

34

> the last 10 per centum of the term to be served under
> conditions that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the prisoner's
> re-entry into the community.  The authority provided
> by this subsection may be used to place a prisoner in
> home confinement. . . .

18 U.S.C. § 3624(c).

Petitioner argues that § 3621(b) clearly and unambiguously requires the

BOP to make individualized placement determinations by considering five

factors, and thus the promulgation of a rule categorically excluding all prisoners

from placement into RRCs until the end of their sentence contradicts the clear

intent of Congress and is invalid under the first prong of <u>Chevron</u>.  Respondent

counters that § 3621(b) does not require that the BOP ever consider an inmate

for a transfer and thus the BOP is under no obligation to consider Petitioner for

a transfer under the five statutory factors specified in § 3621(b).[8]

---

[8] Respondent restricts his defense of § 570.21(b) to the argument that § 3621(b) imposes no mandatory obligation on the BOP to consider Petitioner for a transfer.  (<u>See</u> Resp.'s Resp. to Order to Show Cause [5] at 12-14 (citing <u>Woodall</u>, 432 F.3d at 251 (Fuentes, J., dissenting)).  Respondent argues § 3621(b) confers wide discretion on the BOP to categorically deny transfer without considering the five statutory factors because it provides that the BOP "may at any time . . . transfer" a prisoner.  18 U.S.C. § 3621(b). In the Court's view, however, the BOP may not avoid its obligation to consider the five statutory factors by denying a prisoner transfer vis-a-vis a categorical rule.  <u>See</u> <u>Woodall</u>, 432 F.3d at 249-251 (explaining that, by "denying transfer to inmates generally [via § 570.21(a)], the BOP clearly considered the question of transfer to begin with [and] . . . without reference to the mandatory § 3621(b) factors"); <u>Fults</u>, 442 F.3d at 1092 (stating

35

The Court therefore turns to determine whether, under the two-step

that enforcement of § 570.21(a) amounts to "[a] BOP decision to not transfer an inmate").

In any event, as the Court understands it, Petitioner challenges not only the BOP's categorical refusal to *transfer* Petitioner to an RRC pursuant to § 570.21(a), but also the BOP's refusal to place Petitioner into an RRC facility in making its *initial placement* decision.  Thus, Respondent's sole argument on the merits does not address the separate issue of whether the BOP can, pursuant to § 570.21(a), categorically deny all prisoners consideration for *initial placement* into an RRC.  Respondent's reliance on Judge Fuentes' dissenting opinion is thus unavailing.

Moreover, although Respondent does not raise the argument, others have argued that 18 U.S.C. § 3624(c) also establishes that the BOP is under no statutory mandate to consider a prisoner for transfer to an RRC until the later of ten percent or six months of his sentence remain.  See 18 U.S.C. § 3624(c) ("The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."); Woodall, 432 F.3d at 251-52 (Fuentes, J., dissenting) (concluding that BOP is not obligated to consider a prisoner for a transfer to an RRC until the time-specific mandate of § 3624(c) takes effect); Fults, 442 F.3d at 1093 (Riley, J., dissenting) (agreeing with Judge Fuentes' dissent in Woodall); cf. Levine, 455 F.3d at 89 (Raggi, J., dissenting) (arguing that purpose of § 3624(c) may better be served by restricting prisoners from RRCs until the mandate of § 3624(c) is triggered).

Although § 3624(c) imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a reentry program, including home confinement, as the inmate's release date nears, "§ 3624(c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration."  Wedelstedt, 477 F.3d at 1166.  Section 3624(c) pertains only to the prerelease period, and does not affect the BOP's obligation under § 3621(b) to consider the five statutory factors in initial placement decisions or in transfer decisions made prior to the pre-release period.  See Elwood, 386 F.3d at 847 ("Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more.  Thus, "§ 3624(c) has no bearing on whether [§570.21(a) is] consistent with the § 3621(b) statutory scheme for BOP placement and transfer determinations."  Wedelstedt, 477 F.3d at 1166.

Because he has limited his defense of § 570.21(a) to the temporal-limitation argument, Respondent does not address whether § 570.21(a) is a reasonable interpretation of § 3621(b) and is thus entitled to deference under Chevron.  Nevertheless, the Court proceeds to examine the issue, assisted by Petitioner and its own research.

36

AO 72A
(Rev.8/82)

analysis in <u>Chevron</u>, this agency regulation "accords with congressional intent as manifested in the governing statute," 18 U.S.C. § 3621(b).  <u>Scheerer</u>, 445 F.3d at 1321.

### C.     Decisions by Other Courts

Of the four courts of appeals that examined the validity of § 570.21(a), all have agreed with Petitioner's position that it is inconsistent with the clear and unambiguous mandate of § 3621(b) that the BOP make individualized determinations based on the five listed factors.  <u>Wedelstedt v. Wiley</u>, 477 F.3d 1160, 1166 (10th Cir. 2007); <u>Levine v. Apker</u>, 455 F.3d 71 (2d Cir. 2006); <u>Fults v. Sanders</u>, 442 F.3d 1088 (8th Cir. 2006); <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (3d Cir. 2005).  These courts reason that, while the "statute gives the agency discretion in making this designation by stating the BOP may assign the prisoner to 'any available penal or correctional facility,'" that discretion "is cabined by further mandatory direction to the BOP to "consider[ ]" the five factors enumerated in the statute when making its designation."  <u>Wedelstedt</u>, 477 F.3d at 1165 (citing 18 U.S.C. §§ 3621(b)(1)-(5)).  In particular, "[t]he use of the word 'and' between the fourth and fifth factors provides a clear indication that all five factors are to be

considered." Id. at 1165-66.  Moreover, the "individualized nature of three of the five factors—the nature of the prisoner's offense, the prisoner's history and characteristics, and the sentencing judge's statement—made such consideration impossible" in the enforcement of a categorical rule.  Id. at 1168; see also Woodall, 432 F.3d at 248 ("By definition, particular circumstances cannot be considered in promulgating a blanket rule.").  Because § 3621(b) requires all placement decisions be made by an "individualized process that cannot possibly occur" pursuant to categorical determination, these courts conclude that the placement rules are invalid under the first prong of Chevron.  Woodall, 432 F.3d at 250.  The Third Circuit also concluded, in the alternative, that even assuming that § 3621(b) survived Chevron's first prong, the RRC Placement Rule was not a reasonable construction of § 3621(b) and thus failed the second prong of Chevron as well.  Woodall, 432 F.3d at 249.

Notably, all four decisions by the courts of appeals invited dissents, each invoking the Supreme Court's decision in Lopez v. Davis to conclude that the BOP has authority to promulgate rules of general applicability, despite the mandatory five-factor framework of § 3621(b).  See Wedelstedt, 477 F.3d at 1169 (Hartz, J., dissenting); Levine, 455 F.3d at 91 (Raggi, J., dissenting);

Woodall, 432 F.3d at 251 (Fuentes, J., dissenting); Fults, 442 F.3d at 1093

(Riley, J., dissenting). The Supreme Court's decision in Lopez warrants

consideration here.

In Lopez, the Supreme Court rejected a prisoner's challenge of a BOP

rule which categorically denied prisoners convicted of gun-related crimes

consideration for participation in a drug treatment program that, if completed,

could have led to a shorter prison stay.  531 U.S. at 241.  Although the statute

providing authority for the drug treatment program did not require

individualized determinations of eligibility or contain specific eligibility

requirements, the Court noted, in concluding that the BOP had the authority to

categorically exclude certain prisoners from participation in the program, that,

"[e]ven if a statutory scheme requires individualized determinations . . . the

decisionmaker has the authority to rely on rulemaking to resolve certain issues

of general applicability unless Congress clearly expresses an intent to withhold

that authority."  Id. 243-44.

The dissenters in Wedelstedt, Levine, Woodall, and Fults relied on this

statement in Lopez to conclude that the BOP at least had *some* authority to

promulgate rules of general applicability respecting placement decisions.  In

39

Wedelstedt, although Judge Hartz found "no difficulty [in] agreeing . . . that [§ 3621(b)] requires the [BOP] to consider the five listed factors," he concluded that, under Lopez, the BOP could do so through the promulgation of a categorical rule.  Wedelstedt, 477 F.3d at 1169 (Hartz, J., dissenting). Since § 3621(b) does not clearly and unambiguously preclude the BOP from adopting categorical rules of prisoner placement, Judge Hartz reasoned that a categorical regulation could withstand scrutiny under Chevron as long as the BOP "reasonably considers a factor when promulgating a general rule."  Wedelstedt, 477 F.3d at 1169 (Hartz, J., dissenting).[9]  He favored remand to the district court to determine, under the second prong of Chevron, "whether the BOP has

_____

[9] As did Judge Hartz, the dissents in the other three cases also invoked Lopez to conclude that the BOP had rulemaking authority under § 3621(b), but they went on to also conclude that the RRC Placement Rule was a reasonable interpretation of § 3621(b) under the second prong of Chevron.  See Levine, 455 F.3d at 91 (Raggi, J., dissenting) (concluding, under Lopez, that "[t]he BOP might reasonably conclude, as it implicitly did here, that, regardless of an individual prisoner's offense, history, and personal characteristics, or any statement made by a sentencing judge, other factors such as the limited availability of CCC resources, the particular suitability of CCCs to other statutory mandates, the policy statements of the Sentencing Commission, and the statutory prohibition on social and economic favoritism, combine to warrant a categorical rule excluding CCC facilities from consideration in general § 3621(b) designations"); cf. Woodall, 432 F.3d at 251 n.15 (Fuentes, J., dissenting) (arguing that § 3621(b) does not contain a temporal limitation on when a prisoner must be considered for transfer and thus a categorical rule imposing a temporal limitation is consistent with the BOP's authority under Lopez); Fults, 442 F.3d at 1093 (Riley, J., dissenting) (arguing that Lopez provides "unmistakable" basis for BOP to promulgate categorical rules).

justified [§ 570.21(a)] as a reasonable application of the statutory factors."

Id. at 1171 (Hartz, J., dissenting).

### D.   Section 570.21(a) is Invalid under the Second Prong of <u>Chevron</u>

After carefully considering the issue, this Court agrees with dissenting

opinion of Judge Hartz that, while § 3621(b) mandates consideration of the five

specified factors, it does not express a clear and unambiguous Congressional intent

to withhold authority from the BOP to promulgate rules of general applicability

that take those factors into account.  Under the first prong of <u>Chevron</u>, § 3621(b)

is ambiguous on the question of the degree of discretion it provides the Bureau of

Prisons to promulgate rules of general applicability.   But because the RRC

Placement Rule categorically excludes all prisoners from consideration for

placement into an RRC on the basis of a sole, non-statutory factor—time

served—and ignores all five mandatory factors—the Court concludes, under the

second prong of <u>Chevron</u>, that it is an unreasonable exercise of the BOP's rule-

making authority under § 3621(b).

> 1.   *<u>Chevron</u>'s First Step:  Section 3621(b) Does Not Clearly and Unambiguously Foreclose the BOP's Authority to Promulgate Categorical Rules.*

41

Petitioner urges the Court to conclude, as did the courts in <u>Wedelstedt</u>, <u>Levine</u>, <u>Woodall</u>, and <u>Fults</u>, that § 3621(b) preempts the BOP from enacting any categorical rule concerning prisoner placement, by requiring an "individualized process" for each placement decision made by the BOP.  <u>See</u>, <u>e.g.</u>, <u>Woodall</u>, 432 F.3d at 250.  Petitioner's most compelling argument is that three of the five factors required to be considered—characteristics of the individual, nature of the offense, and statements by the sentencing judge—could not have been taken into consideration in the adoption of § 570.21(a).

But in the Court's view, Petitioner's argument fails to take into account the authority of the BOP "to rely on rulemaking to resolve certain issues of general applicability"—authority that the Supreme Court has made clear remains vested in the BOP even under circumstances in which it has a statutory obligation to conduct individualized determinations.  <u>Lopez</u>, 531 U.S. at 243-44. Judge Hartz's dissent in <u>Wedelstedt</u>, by accounting for the BOP's statutorily-guided rulemaking authority, takes the more convincing view.  <u>Wedelstedt</u>, 477 F.3d at 1170 (Hartz, J., dissenting); <u>see</u> <u>also</u> <u>Scheerer</u>, 445 F.3d at 1320 (framing "precise question" under <u>Chevron</u> in case challenging immigration status eligibility rules as whether

"detail[ing] eligibility standards [by statute] indicate a clear congressional intent to preempt the field from further regulation" by a rulemaker).

First, nothing in Section 3621(b) manifests a Congressional intent to entirely withhold from the BOP all authority to promulgate categorical rules of prisoner placement—particularly those rules resolving issues of general applicability which may more efficiently implement Congress's purpose in § 3621(b) and better avoid the concerns of mandatory individualized processing.  See Lopez, 531 U.S. at 244 (noting concerns of "favoritism, disunity, and inconsistency" in precluding BOP from rulemaking in areas "that may be established fairly and efficiently") (quotations omitted).  As Judge Hartz explained,

> Experience, or common sense, may reveal that in a particular set of circumstances one of the factors—call it factor A—simply cannot overcome the weight of the other factors.  Accordingly, there is no need to engage in fact-finding or analysis regarding factor A in individual cases within that set of circumstances.  Recognition of that reality is not contrary to a directive to consider all five factors.  It is enough that the BOP has considered factor A in that context and determined that the outcome will be the same no matter what the specific facts regarding the factor.

Wedelstedt, 477 F.3d at 1169-70 (Hartz, J., dissenting).

43

The Court doubts, for example, that Congress, by outlining factors for consideration in § 3621(b), intended to forbid the BOP from categorically denying a convicted murderer from placement in a minimum-security facility, see Wedelstedt, 477 F.3d at 1170 (Hartz, J., dissenting), or from categorically excluding white-collar criminals from placement on death row, id. at 1170-71 (Hartz, J., dissenting).  Nor can the Court read § 3621(b) to impose other impractical restraints on the BOP, such as containing a prohibition against rules concerning the placement of mentally-ill prisoners in specially-equipped facilities. Because the construction of § 3621(b) by the Second, Third, Eighth, and Tenth Circuits ignores the presumptive authority of the BOP to promulgate such rules resolving issues of general applicability, the Court declines to adopt their view that § 3621(b) requires that every BOP placement decision, no matter how foregone, be conducted by "individualized process."

Instead, this Court is of the view that § 3621(b) authorizes the BOP to promulgate categorical rules "resolv[ing] issues of general applicability," so long as, in doing so, it reasonably considers the five § 3521(b) factors. Wedelstedt, 477 F.3d at 1169 (Hartz, J., dissenting); Lopez, 531 U.S. at 243-44; see also Scheerer, 445 F.3d at 1321 ("[S]tatutory eligibility standards alone do not reflect a clear

44

congressional intent to preempt further agency regulation."). This view better comports with the wide discretion afforded the BOP in § 3621(b) to make placement decisions, and the recognition in <u>Lopez</u> of an agency's presumptive authority to promulgate rules of general applicability consistent with Congressional intent. Thus, under the first step of <u>Chevron</u>, the Court concludes that the  BOP is authorized to promulgate rules resolving issues of general applicability. Nevertheless, because the scope of that authority is not clear and unambiguous, the Court turns to the second step of the <u>Chevron</u> analysis.

> 2. *<u>Chevron</u>'s Second Step: Section 570.21(a) Does Not Take Into Account Any Mandatory § 3621(b) Factor and thus is Not a Permissible Construction of the Statute*

Under the second step of the <u>Chevron</u> analysis, the Court must determine whether § 570.21(a) "is 'based on a permissible construction of the statute.'" <u>Scheerer</u>, 445 F.3d at 1321 (quoting <u>Chevron</u>, 467 U.S. at 843). After careful consideration, the Court concludes that it is not.

As previously stated, § 3621(b) requires that the BOP consider five factors: the resources of the facility contemplated, the nature of the offense, the characteristics of the prisoner, the sentencing court's recommendations, and policy statements of the Sentencing Commission.   18 U.S.C. § 3621(b).   That

45

consideration is mandatory.  As virtually all who have considered the issue have concluded, "[t]he use of the word 'and' between the fourth and fifth factors provides a clear indication that all five factors are to be considered."  E.g., Wedelstedt, 477 F.3d at 1165-66; id. at 1169 (Hartz, J., dissenting); Woodall, 432 at 245; id. at 251 (Fuentes, J., dissenting) ("I agree . . . that 18 U.S.C. § 3621(b) requires the BOP to consider each of the factors listed in that statute in designating the place of an inmate's imprisonment or transfer.").  A contrary interpretation would render the five factors in § 3621(b) aspirational and, by consequence, superfluous.

Moreover, to be based on a permissible construction, it may be "enough that the BOP has considered factor A in that context and determined that the outcome will be the same no matter what the specific facts regarding the factor." Wedelstedt, 477 F.3d at 1169-70 (Hartz, J., dissenting).  Thus, a categorical determination that all prisoners convicted of murder may not be placed in a RRC, for example, elevates the second factor—"the nature and circumstances of the offense," 18 U.S.C. § 3621(b)(2)—over all others.  In coming to the conclusion that forbidding violent offenders from low-security facilities comports with

46

Congressional intent as expressed in § 3621(b), the history of the prisoner might reasonably be given little significance.

By way of a different example, a regulation concerning the placement of mentally ill prisoners may elevate the "characteristics of the prisoner" over other factors. In both circumstances, the BOP has arrived at a categorical rule resolving issues of general applicability based on a consideration of *all* factors, by concluding that one factor takes precedence. Wedelstedt, 477 F.3d at 1169-70 (Hartz, J., dissenting). Moreover, both circumstances define the class of individuals subject to the regulation by a specific factor contemplated in the statute, adding further support to the reasonableness of the rule.

Section 570.21(a), by contrast, precludes *all* prisoners from consideration for placement in a RRC based on the amount of their sentences. No prisoner, regardless of the nature of his offense, his personal characteristics, the statements of a sentencing court, the resources of the specific facility contemplated, or a pertinent policy statement issued by the Sentencing Commission, may be eligible for placement into a RRC until "the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). In doing so, Section 570.21(a) elevates a non-factor—the length of a prisoner's sentence—over all five

47

of the mandatory statutory factors.  And it does so without defining the class of prisoners subject to the categorical regulation based on any factor contained in 28 C.F.R. § 570.21(a).  Because it fails to reasonably apply the five mandatory factors, § 570.21(a) is not based on a permissible interpretation of § 3621(b).

In arriving at this conclusion, the Court notes that the BOP does not contend in this case that the promulgation of § 570.21(a) was based on a consideration of any or all of the § 3621(b)(2) factors.  (See supra at 35 n.8).  And while the BOP could theoretically promulgate a categorical rule denying prisoners placement in RRCs based on limited resources, see 18 U.S.C. § 3621(b)(1), or based on policy statements issued by the Sentencing Commission, see 18 U.S.C. § 3621(b)(5), the BOP has offered no such justification in this case.  They have also failed to offer any justification for ignoring the remaining three factors, which require consideration of a prisoner's individual circumstances.  Thus, the RRC Placement Rule's impermissibility  is an impermissible construction because it entirely fails to "take into account Congress's indications that certain individualized factors—including a sentencing court's recommendations—should be considered in the BOP's placement and transfer scheme."  See Woodall, 432 F.3d at 249 (invalidating § 570.21(a) under second prong of Chevron); cf. Wedelstedt, 477

48

F.3d at 1168 (rejecting BOP's argument that it considered five factors in promulgating § 570.21(a) because "[t]he individualized nature of three of the five factors—the nature of the prisoner's offense, the prisoner's history and characteristics, and the sentencing judge's statement—made such consideration impossible").  The BOP has also failed to demonstrate, much less argue, that § 570.21(a) reflects the reasoned judgment that either or both of the non-individualized factors outweigh the three individualized factors.

For these reasons, the Court concludes that § 570.21(a) fails the second prong of <u>Chevron</u> because it is not based on a permissible construction of § 3621(b).[10]  Because it is unclear from the text of § 570.21(a) that the BOP

---

[10] In reaching this conclusion, the Court is guided by the Eleventh Circuit's treatment of an analogous challenge of an agency regulation in <u>Scheerer v. Attorney General</u>.  445 F.3d at 1321.  In <u>Scheerer</u>, the Eleventh Circuit addressed a regulation which categorically excluded arriving aliens who were involved in removal proceedings from consideration for an adjustment in immigration status.  <u>Id.</u> at 1219 (citing 8 C.F.R. § 1245.1(c)(8).  The plaintiff argued that the regulation violated the Congressional intent expressed in 8 U.S.C. § 1255, which provides three eligibility requirements for immigration status adjustment: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."  <u>Id.</u>

The appellant argued that the regulation promulgated by the Attorney General violated <u>Chevron</u> because it established an eligibility requirement in addition to the three requirements provided in 8 U.S.C. § 1255.  Furthermore, because all aliens "paroled into the United States" were generally placed in removal proceedings, the appellant argued that the categorical rule had the effect of prohibiting a large class of aliens that Congress

considered or incorporated any of the five mandatory factors, it is invalid.

In sum, the Court concludes that, under the first prong of <u>Chevron</u>, §
3621(b) is ambiguous on the question of the degree of discretion it provides the

---

deemed eligible in the enabling statute.  <u>Id.</u>

The Eleventh Circuit began its analysis by rejecting the plaintiff's argument that, by merely detailing eligibility standards, Congress clearly and unambiguously intended to foreclose the Attorney General's authority to promulgate additional eligibility requirements.  <u>Id.</u> at 1321.  Relying on the Supreme Court's decision in <u>Lopez</u>, the court concluded that, "[b]ecause precedent establishes that statutory eligibility standards alone do not reflect a clear congressional intent to preempt further agency regulation, we find, under the first step of the <u>Chevron</u> analysis, § 1255 is at best ambiguous as to whether the Attorney General may regulate eligibility to apply for adjustment of status."  <u>Id.</u>

The Court then turned to the second step of the <u>Chevron</u> analysis, to determine whether the rule was "'based on a permissible construction of the statute.'"  <u>Id.</u> (citing <u>Chevron</u>, 467 U.S. at 843).  Agreeing with the appellant that the statute, on its face, "contemplates that parolee-arriving aliens, virtually all of whom are placed in removal proceedings—should be eligible to apply for an adjustment of status," the court reasoned that a regulation which excluded virtually that entire class of aliens from eligibility created an "intractable conflict" which could not be based on a permissible construction of the statute.  <u>Id.</u> at 1322.  Thus, the court concluded, "'[w]hile the statute may be ambiguous enough to allow for some regulatory eligibility standards, it does not so totally abdicate authority to the Attorney General as to allow a regulation . . . that essentially reverses the eligibility structure set out by Congress."  <u>Id.</u> (quoting <u>Zheng v. Gonzales</u>, 422 F.3d 98, 120 (3d Cir. 2005)).

This Court tracks a similar course as the court in <u>Scheerer</u>.  In the first step of the <u>Chevron</u> analysis, it frames the "precise question" at issue as did the court in <u>Scheerer</u>: whether the scope of the agency's authority to promulgate rules resolving issues of general applicability is clear and unambiguous.  Answering that question in the negative, the Court proceeded to determine whether the agency regulation was a reasonable interpretation of the intent expressed by Congress in providing a framework under which agency determinations should be made regarding a statutory benefit.  As did the court in <u>Scheerer</u>, this Court concludes that the agency's rule was not a permissible construction because its over-inclusive denial of the statutory benefit undermined Congress' intent to generally preserve eligibility except where it has provided grounds for denial.

50

Bureau of Prisons to promulgate rules of general applicability because of its mandate that five factors be considered in placement decisions. But because the RRC Placement Rule, by categorically excluding all prisoners from an available facility on the basis of time served, ignores *all* five factors, it is an unreasonable application of the BOP's rule-making authority under § 3621(b) and thus fails under the second prong of <u>Chevron</u>.

### E.    Remedy

The Court has concluded that the process by which Petitioner was denied placement and transfer into an RRC was invalid under 18 U.S.C. § 3621(b). Petitioner is therefore entitled to be considered for placement into an RRC. In making this determination, the BOP must consider the factors set forth in 18 U.S.C. § 3621(b) without regard to 28 U.S.C. § 570.21(a). The Court, however, takes no position on whether Petitioner should be transferred. <u>See</u> <u>Wedelstedt</u>, 477 F.3d at 1168-69; <u>see</u> <u>also</u> <u>Scheerer</u>, 445 F.3d at 1322.

### Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Court's Report and Recommendation [7] insofar as it concludes that the instant petition is ripe for adjudication and insofar as it rejects Petitioner's challenge to 28 C.F.R.

570.21(a) under the Due Process and Equal Protection Clauses of the Fifth Amendment to the United States Constitution.  The Court **DECLINES** to adopt the remainder of the Report and Recommendation.   The Court **GRANTS** Petitioner's Petition [1], and **ENJOINS** further enforcement of 28 C.F.R. § 570.21(a).  Respondent is **ORDERED** to consider Petitioner for placement in a Residential Reentry Center pursuant to the five factors contained in 18 U.S.C. § 3421(b) and consistent with this opinion.

**SO ORDERED** this  19th  day of June, 2007.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

52